CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

ANDREW PAULSON (CABN 267095)
Assistant United States Attorney

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3680
FAX: (510) 637-3724
andrew.paulson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KARMAL HOWARD,<br><br>Defendant. | Case No. 4:26-cr-00152-JST<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing Date: August 21, 2026<br>Hearing Time: 9:30 a.m.<br>Courtroom: 6, 2nd Floor<br><br>Hon. Jon S. Tigar |

## I. INTRODUCTION

On July 21, 2025, an Oakland Police Department (OPD) officer saw the defendant, Karmal Howard, standing in a large crowd in front of the G1 Liquor store on 23rd Avenue in Oakland wearing a sweatshirt with what appeared to be a handgun hidden inside the front pocket. A few minutes later, OPD officers stopped the car Howard was driving and found a Glock 20 pistol loaded with 11 rounds of 10mm ammunition tucked in the front pocket of his sweatshirt. They also found a total of more than $7,800 cash and approximately 29.3 grams of cocaine in his pants pockets.

As part of a surge in federal firearm enforcement measures in Oakland and the East Bay, on April 2, 2026, a grand jury indicted Howard for one count of being a felon in possession of a firearm and

ammunition in violation of 18 U.S.C. § 922(g)(1). Federal agents arrested Howard on May 12, 2026, and he pleaded guilty on July 17, 2026. For the reasons set forth below, the government joins Probation and recommends that the Court sentence Howard to 12 months and 1 day imprisonment, three years supervised release, and a $100 special assessment.

## II. OFFENSE CONDUCT

### A. The Illegal Possession of Firearms Poses an Unacceptable Danger to Oakland and Surrounding Communities

Howard's conduct in this case, which is described in detail below, did not occur in a vacuum. Rather his illegal possession of a firearm helps to fuel the wave of gun violence that is and has been ravaging Oakland. The proliferation of illegal firearms amplifies the issue of violent crime, as robberies, burglaries, domestic violence incidents, or even routine altercations like road rage incidents, carry the potential to become deadly when the participants are armed. Illegal firearms are also central to the challenge of gang violence, with groups of young armed people too often turning residential neighborhoods into combat zones. Although the rate of shootings has fallen from its peak in 2023, the number of shootings and gun-related murders remains unacceptably high.

Harrowing statistics underscore the damage illegal firearms inflict on Oakland. In 2025, the city suffered 67 homicides at a rate of 15 homicides per 100,000 residents. This homicide rate is *five times* that of San Francisco, and substantially higher than neighboring cities in Berkeley and San Leandro.



| City | 2025 Population | Homicides 2025 | Homicides (per 100k) |
|---|---|---|---|
| *Oakland* | *444,196* | *67* | *15* |
| San Francisco | 826,079 | 28 | 3 |
| Los Angeles | 3,874,000 | 230 | 6 |
| Berkeley | 123,195 | 1 | 0.8 |
| San Leandro | 86,587 | 3 | 3.5 |
| San Jose | 993,000 | 24 | 2.4 |

It is not a mystery why Oakland has suffered so many more homicides than its neighbors. It is because of illegal firearms. Of the 67 homicides in 2025, 65 of them were committed with a firearm. Indeed, as part of the violent crime reduction initiative, one of the other defendants charged—not Howard—had engaged in a shootout in a crowded downtown Oakland nightclub in the early morning of March 7, 2026, in which at least five others also suffered gunshot wounds during the incident and two people were killed, including a schoolteacher who was shot as she attempted to run from the gunfire. *See United States v. Jarvis Toussaint*, Case No. 4:26-cr-00235-JSW, Dkt. 1.

And the problem is not limited to murders. There were 350 individuals who were shot in 2025, many suffering gruesome injuries with lifelong impacts. 2025 also saw 1,674 robberies and 2,950 aggravated assaults in 2025. As with homicides, Oakland suffers robbery and aggravated assaults at a much higher rate when compared with its neighbors. A substantial portion of these violent crimes also involved firearms. These violent confrontations, when mixed with illegally possessed firearms, all too often escalate into a shooting or a murder.

Nor has the problem abated in 2026. Through only the first quarter of 2026, Oakland had already suffered 13 homicides, 374 robberies (102 involving firearms), 588 aggravated assaults, and 53 assaults with a firearm (including shootings and injuries by firearms). These statistics are staggering.

This is also not a problem that is limited to people already involved in criminal activity. Every resident of Oakland is made less safe by these illegal guns. Innocent bystanders uninvolved in criminal activity have been maimed and killed. For example, in 2021, an almost two-year old boy was shot and killed in his car seat in his family vehicle when gang members engaged in a shootout on I-880 in Oakland. And, as described above, in March 2026, an innocent 33-year-old middle school teacher was murdered at a mass shooting at a night club in Oakland. Additionally, two other defendants (not Howard)

charged in the violent crime reduction initiative are charged with illegally possessing ammunition that was fired during a shooting in a parking lot near two schools in Oakland. *See United States v. Jamonn Blincoe*, 4:26-cr-00270-JST; *United States v. Kawan Hardy*, 4:26-cr-00271.

These tragedies and grim statistics are astounding and unacceptable. Oakland has suffered enough. The proliferation of illegal firearms is not a trivial matter, but a direct threat to the safety of the community. Howard's offense is grave and must be set against this context of a culture of violence in Oakland that must be disrupted.

**B. Howard is Caught with a Loaded Glock 20 and Cocaine**

At approximately 5:45 p.m. on July 21, 2025, an OPD officer observed a large crowd gathered in front of the G1 Liquor store at 2003 23rd Avenue in Oakland. There were several double-parked cars and multiple individuals drinking alcohol on the street. The officer also saw Howard, who walked into the middle of the street. He was wearing a hooded sweatshirt with what appeared to be a handgun concealed in the front pocket. Eventually, Howard got into a car and drove away.

OPD officers in marked cars pulled Howard over a few blocks away. There was another man in the passenger seat. After he stopped the car near the apartment buildings located at 1699 Excelsior Avenue in Oakland, OPD officers approached the car and asked Howard and the passenger to get out. After he got out of the driver's seat of the car and stood up, an officer reached in the front pocket of Howard's sweatshirt and removed a Glock 20 pistol that was loaded with 11 rounds of 10 mm Auto ammunition. In Howard's right front pants pocket, OPD officers found a total of $6,951.00 in small denomination bills, and in his right front coin pocket they found three loose rocks of crack cocaine. In Howard's left front pants pocket, officers found $914 in small denomination bills and two clear plastic baggies containing cocaine weighing approximately 29.3 grams (total of $7,865 in both pockets). In the center console of the car Howard was driving, officers found a scale and one plastic baggie with crack cocaine weighing approximately 28.6 grams.

## III. THE SENTENCING GUIDELINES AND CRIMINAL HISTORY

The government agrees with Probation's calculation of the sentencing Guidelines in this case, which are set forth below and in the Plea Agreement. PSR ¶¶ 14-23.

| Count 1: 18 U.S.C. § 922(g)(1) – Felon in Possession of Firearm / Ammunition | | |
|---|---|---|
| | **U.S.S.G. Section** | **Level/Points** |
| Base Offense Level | § 2K2.1(a)(6) | 14 |
| Specific Offense Characteristic:<br>- Possession in connection with another felony offense (possession of narcotics) | § 2K2.1(b)(7)(B) | +4 |
| Adjusted Offense Level | | 18 |
| Acceptance of Responsibility | § 3E1.1 | -3 |
| Total offense level | | 15 |

The government also agrees with Probation's calculation of Howard's criminal history. Between 1994 and 1999, Howard received three misdemeanor convictions for receiving stolen property, theft, and vehicle theft, and one felony conviction for selling narcotics. PSR ¶¶ 26-29. Given the age of these convictions, they are not accounted for in Howard's criminal history computation. In 2001, Howard was convicted by a jury of first-degree robbery related to a home invasion and was sentenced to 18 years' prison. *Id.* ¶ 30.[1] While on parole for that offense, Howard was arrested and later convicted of felony possession of a controlled substance, an offense for which he received 120 days jail on November 2, 2021. *Id.* ¶ 31. These convictions give Howard a total criminal history score of five, which corresponds to a Criminal History Category (CHC) of III. With an offense level of 15 and a CHC III, the Guidelines range in this case is 24-30 months.

## IV. SENTENCING RECOMMENDATION

### A. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520

[1] As the PSR notes, Howard claims he was wrongfully convicted of this offense. Regardless of Howard's claimed innocence, it does not affect the criminal history calculation. Moreover, Howard repeatedly challenged his conviction through direct appeals, several petitions for writ of habeas corpus in state court, and successive federal petitions for writ of habeas corpus. All were denied. Indeed, in 2016, the state court held an evidentiary hearing to address Howard's claims of actual innocence based on newly discovered evidence. Once again, Howard's petition was denied and his conviction was upheld. The PSR includes a footnote that quotes Howard's counsel referring to the Innocence Project's (IP) attempts to overturn Howard's conviction and the IP lawyer's conclusions as to Howard's innocence. The government does not seek to relitigate this conviction, but at the Court's request, the government will provide the Alameda County District Attorney's 2016 post-evidentiary hearing briefing, which sets forth the evidence of Howard's guilt in the underlying case and the deficiencies in the purportedly new evidence Howard relied upon to support his claim of innocence.

F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; and (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**B. The Government's Recommended Sentence**

The seriousness of the offense, the need for deterrence, and the history and characteristics of the defendant all support the government's recommendation. As discussed above, gun violence has plagued Oakland for far too long. In an effort to tackle this problem, beginning in March 2026, federal and local law enforcement coordinated efforts in a surge of federal firearm enforcement measures in Oakland and the East Bay that resulted in the seizure of 76 illegally possessed firearms and charges against 51 defendants. Howard is one of those defendants. The government's recommended sentence in this case plays a key role in its efforts to disrupt the cycle of gun violence in the East Bay by deterring Howard from ever again getting his hands on dangerous guns and others like Howard who continue to threaten the safety of the East Bay community by illegally possessing firearms.

The facts and circumstances of the offense also support a meaningful sentence here. Howard was moving around Oakland with a loaded handgun, distribution-level quantities of cocaine, and thousands of dollars in cash in his pockets. And he did this after two prior felony drug-related convictions: one in 1999 and one in 2021 while he was on parole following an 18-year sentence for a home invasion robbery conviction. None of these convictions or lengthy sentences deterred Howard. A meaningful sentence in this case, which would mark the first time Howard has been in federal custody or on federal supervision, is necessary to deter Howard.

The history and characteristics of Howard, on the other hand, support a more lenient sentence. It appears that as a child Howard, who was born and raised in the East Bay, had to confront the very cycle

of violence that this case and others like it aim to upset. He has also reportedly struggled from an early age with substance abuse involving a variety of drugs, including alcohol, cocaine, crack cocaine, and LSD.

Also in Howard's favor is that after his arrest on the federal indictment, he took early and full responsibility for his criminal misconduct. The government is optimistic that this case will serve as a wake-up call for Howard. He is now 50 years old. His children need him in their lives. He cannot continue to engage in behavior that threatens the public and that will result in his continued incarceration. Rather than being a threat to the community, the government is hopeful that its recommended sentence, which includes three years of supervised release after his prison term, will cause Howard to transform himself into a productive member of the community.

## V. CONCLUSION

For the reasons stated above, the government joins Probation and recommends that the Court sentence Howard to 12 months and 1 day imprisonment, three years' supervised release, and a $100 special assessment.

DATED: August 14, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Andrew Paulson*
ANDREW PAULSON
Assistant United States Attorney